RICHARD J. NELSON (State Bar No. 141658)
E-Mail: rnelson@sideman.com
ZACHARY J. ALINDER (State Bar No. 209009)
E-Mail: zalinder@sideman.com
NICHOLAS A. SHEN (State Bar No. 324712)
E-Mail: nshen@sideman.com
SIDEMAN & BANCROFT LLP
One Embarcadero Center, Twenty-Second Floor
San Francisco, California 94111-3711
Telephone: (415) 392-1960
Facsimile: (415) 392-0827

Attorneys for Plaintiffs
Cisco Systems, Inc. and Cisco Technology, Inc.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CISCO SYSTEMS, INC., a California corporation, and CISCO TECHNOLOGY, INC., a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>SHOC NETWORKS, LLC, formerly known as DALDAN TECHNOLOGIES, LLC and DT NETWORKS, a Washington limited liability company; RONALD REED, an individual, and DOES 1 through 10, inclusive.<br><br>Defendants. | Case No. 3:19-cv-7516<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:**<br><br>1. **FEDERAL TRADEMARK INFRINGEMENT AND COUNTERFEITING, 15 U.S.C. § 1114;**<br>2. **FEDERAL UNFAIR COMPETITION, 15 U.S.C. § 1125;**<br>3. **FEDERAL DIRECT AND INDIRECT COPYRIGHT INFRINGEMENT, 17 U.S.C. §§ 501** *et seq.*; **and,**<br>4. **TRAFFICKING IN COUNTERFEIT AND/OR ILLICIT LABELS AND DOCUMENTATION IN VIOLATION OF 18 U.S.C. § 2318.**<br><br>**Demand for Jury Trial** |

Plaintiffs CISCO SYSTEMS, INC. ("CSI") and CISCO TECHNOLOGY, INC. ("CTI" and together with CSI, "Cisco" or "Plaintiffs"), hereby complain and allege against Defendants SHOC NETWORKS, LLC, RONALD REED, and DOES 1 through 10, inclusive (collectively "Defendants") as follows:

## INTRODUCTION

1. Defendants have been caught reselling stolen and/or pirated Cisco software licenses to other resellers and end customers who they have duped into buying unlicensed copies of software at cut-rate prices, rather than buying genuine Cisco software licenses through authorized distribution channels.

2. To further create the false impression that these software licenses are genuine and authorized by Cisco, Defendants distributed the unlicensed copies of Cisco software along with copies of counterfeit and/or illicit software license claim certificates that had been mocked up to look like genuine Cisco software license claim certificates.

3. Defendants' unlawful scheme, as alleged in more detail below, has not only caused Cisco significant monetary damages, but also has undermined Cisco's brand, goodwill, and reputation with customers and its authorized partners. When Cisco requested that Defendants cease and desist their sales of these unlawful and infringing software licenses, Defendants refused, confirming that they intend to continue their unlawful and infringing conduct unabated.

4. Accordingly, Cisco brings this Action to put a stop to Defendants' unlawful and infringing conduct, to enjoin further unlawful and infringing conduct, and to recover full damages for the significant harm they have caused.

## PARTIES

5. CSI is, and at all times mentioned herein was, a California corporation, with its principal place of business at 170 W. Tasman Dr., San Jose, California 95134. CTI is, and at all times mentioned herein was, a California corporation with its principal place of business at 170 W. Tasman Dr., San Jose, California 95134. CTI owns the trademarks that are used by CSI in marketing Cisco-branded products and the copyrights in the software unlawfully distributed by Defendants.

6. Cisco is informed and believes, and thereon alleges, that Defendant Shoc Networks, LLC, doing business as www.shocnetworks.com, ("Shoc Networks") was at all relevant times a Washington limited liability company, which lists its principal office street address as 3250 Airport Way S, Suite #713, Seattle, WA 98134.  Shoc Networks directly and purposefully engaged in commercial transactions in the state of California specifically related to the alleged unlawful conduct in this Complaint.  For example, Shoc Networks marketed and distributed the infringing Cisco software to at least one well-known California-based third party reseller.  Further, Cisco is informed and believes, and thereon alleges, that Shoc Networks was formerly known as Daldan Technologies, LLC and/or DT Networks (together "DT Networks").  Cisco is informed and believes, and thereon alleges that, Defendant Shoc Networks was formed by Mr. Reed, after DT Networks was caught selling infringing Cisco software licenses and then purported to shut down operations.  Further, both DT Networks and Shoc Networks have been represented by the same counsel, Arthur Freierman.

7. Cisco is informed and believes, and thereon alleges, that Defendant Ronald Reed is an individual, residing in the state of Washington.  Cisco is informed and believes, and thereon alleges, that Mr. Reed founded and controlled both DT Networks and Shoc Networks.  Cisco is further informed and believes, and thereon alleges, that Mr. Reed did business through one or more Amazon or eBay seller accounts associated with DT Networks and/or Shoc Networks, including Amazon seller account "dtnetworks."  Cisco is further informed and believes, and thereon alleges, that Defendant Reed, who also goes by the shortened name "Ron Reed," is the current president of Shoc Networks.  Cisco is further informed and believes, and thereon alleges, that Mr. Reed is listed as the Registered Agent for Shoc Networks at an apartment address listed in Mercer Island, WA.  Cisco is further informed and believes, and thereon alleges, that Mr. Reed was, and is, the moving, active, and conscious force behind the unlawful and infringing conduct of Shoc Networks, as alleged in more detail below.

8. The true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants named herein as DOES 1 through 10, inclusive, are unknown to Plaintiffs who, therefore, sue said Defendants by such fictitious names.  Plaintiffs will amend this

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Complaint to reflect the true names and capacities of these DOE Defendants when the same shall have been fully and finally ascertained.  Plaintiffs are informed and believe, and thereon allege, that each of the Defendants designated herein as a DOE is legally responsible, in some manner, for the events and happenings herein referred to, and legally caused damages to Plaintiffs as herein alleged.

9. At all times relevant to this action, each Defendant, including those fictitiously named Defendants, was the agent, servant, employee, partner, joint venturer, accomplice, conspirator, alter ego or surety of the other Defendants and was acting within the scope of that agency, employment, partnership, venture, conspiracy, or suretyship with the knowledge and consent or ratification of each of the other Defendants in doing the things alleged in this Complaint.

## JURISDICTION

10. This is an Action founded upon violations of Federal trademark and copyright laws, pursuant to 15 U.S.C. §§ 1051, *et seq.*, 17 U.S.C. §§ 501, *et seq.*, as well as violations of 18 U.S.C. § 2318.  This Court has original subject matter jurisdiction over this Action pursuant to 28 U.S.C. §§ 1331 and 1338(a)-(b), and 15 U.S.C. § 1121.  This Court has supplemental jurisdiction over Cisco's state law claims for relief pursuant to 28 U.S.C. §§ 1338(b) and 1367 because the claims are so related to Cisco's claims under Federal law that they form part of the same case or controversy and derive from a common nucleus of operative facts.

11. This Court has personal jurisdiction over Defendants because each Defendant, in participating in the scheme to distribute the stolen and/or pirated software licenses and counterfeit and/or illicit software license claim certificates, has willfully infringed intellectual property rights of Cisco, a known forum resident, including by trafficking in infringing Cisco software licenses and otherwise causing tortious injury to Cisco, including to its trademarks and copyrights, within California, and within this District in particular.  Defendants did so with knowledge that Cisco was located in California, and within this District in particular, and indeed, continued to do so after receiving cease and desist demands from Cisco.  Further, Defendants have performed intentional acts expressly aimed at Cisco in this forum and thereby caused damage that they knew would be

suffered by Cisco in this forum.  This includes, but is not limited to the fact, that Defendants have marketed, advertised, offered for sale, and actually distributed the infringing Cisco software licenses at issue here into California and transacted business within California specifically related to the infringing distribution scheme alleged in this Complaint.  Defendants have also misrepresented the authentic nature of the counterfeit and/or otherwise infringing "Cisco" software to residents of California.

## VENUE

12. Venue for this action properly lies in the Northern District of California pursuant to 28 U.S.C. § 1391(b)(2) because Defendants committed acts here in furtherance of their unlawful business operations, a substantial part of the events giving rise to the claim occurred in this District, and a substantial part of the property that is the subject of this action is located within this District.  Further, Defendants' acts of infringement are likely to have caused, and are likely to continue to cause, consumer confusion within this District.  Further, venue is also proper in this District under 28 U.S.C. § 1400(a) because Defendants are subject to personal jurisdiction here due to having performed intentional acts expressly aimed at the forum and thereby caused damage that they knew would be suffered by Cisco in this District.

## INTRA-DISTRICT ASSIGNMENT

13. In accordance with LR 3-2(c), this action is properly assigned on a District-wide basis because it relates to Intellectual Property.

## FACTUAL ALLEGATIONS RELATING TO TRADEMARK REGISTRATIONS

14. Founded in 1984, Cisco is a global leader in technology, with a large and diverse customer base spanning governments and large enterprises, small to medium sized businesses, and individual consumers.  Among other areas, Cisco's business includes high quality networking and communications technology, including telecommunications networking hardware and software, advanced telecommunications network design, implementation services, high-end videoconferencing technology, and data center technology.

15. Cisco has developed a strong name and reputation within the trade and among members of the consuming public as a leading manufacturer of mission-critical networking and

telecommunications systems, and it sells these products worldwide.  Cisco has invested substantial effort and resources to develop and promote public recognition of the Cisco trade name and of the family of Cisco-related marks.  Cisco has used the family of Cisco trademarks to identify goods and services as being genuine Cisco products, and the Cisco marks and name are well-recognized signifiers of Cisco's high-quality products and services (the Cisco marks and name are hereinafter referred to as "Cisco Marks").

16. CTI has caused numerous Cisco Marks to be registered on the Principal Register of the U.S. Patent and Trademark Office in connection with a range of telecommunications, computer hardware, and software products and services, and CTI owns all rights, title, and interest in numerous federal trademark registrations, including but not limited to:

| Mark | Registration Number | Registration Date |
|---|---|---|
| CISCO SYSTEMS | 1,996,957 | August 27, 1996 |
| CISCO | 2,498,746 | October 16, 2001 |
| CISCO | 3,709,076 | November 10, 2009 |
| CISCO (logo) | 3,759,451 | March 9, 2010 |
| CISCO | 3,978,294 | June 14, 2011 |

17. Cisco has also expended significant resources and effort to develop and promote public recognition of the Cisco trade name and the family of Cisco-related marks throughout the world, in part by placing Cisco Products and Cisco Marks in its advertising and promotional materials, which reach global consumers through a variety of media, including television, radio, newspapers, magazines, billboards, direct mail, websites, and in telephone directories.

18. Cisco has taken substantial steps and expended significant resources to research and develop strict quality-control standards for all of its products to ensure that products and services bearing Cisco Marks continue to be of the highest quality.

19. As a result of Cisco's extensive advertising and promotional efforts and its continuous use of its core Cisco Marks for more than 30 years, Cisco has attained one of the highest levels of brand recognition. Cisco's customers worldwide have come to rely upon Cisco Marks to identify Cisco's high-quality goods and services, including software. Many of Cisco's products are purchased by the U.S. Government, including branches of the military, and by other industries such as healthcare and banking, and are used in critical and life-essential applications.

**FACTUAL ALLEGATIONS RELATING TO COPYRIGHT REGISTRATIONS**

20. Cisco has also expended significant resources and effort to research and develop world-class software products that enable, enhance, and interoperate with its high-quality hardware. CTI has caused numerous Cisco software copyrights to be registered with the U.S. Copyright Office in connection with a range of telecommunications, computer hardware and software products and services, and CTI owns all rights, title, and interest in these Cisco federal copyrights. The software copyright registrations relevant here include, but are not limited to:

| Title | Registration Number | Effective Date of Registration |
|---|---|---|
| Cisco IOS 15.0 | TX 7-938-524 | November 28, 2014 |
| Cisco IOS 15.1 | TX 7-938-525 | November 28, 2014 |
| Cisco IOS 15.2 | TX 7-937-159 | November 24, 2014 |
| Cisco IOS 15.4 | TX 7-938-341 | November 26, 2014 |
| Cisco IOS XE 2.1 | TX 7-937-240 | November 24, 2014 |
| Cisco IOS XE 3.5 | TX 7-937-234 | November 24, 2014 |
| Cisco NX-OS 4.0 | TX 7-940-713 | November 13, 2014 |
| Cisco NX-OS 5.0 | TX 7-940-718 | November 13, 2014 |
| Cisco NX-OS 5.2 | TX 7-940-727 | November 13, 2014 |
| Cisco NX-OS 6.2 | TX 7-940-722 | November 13, 2014 |

21. The above software copyright registrations include the software versions for the stolen and/or pirated Cisco software licenses that Defendants have unlawfully distributed and otherwise infringed.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

# FACTUAL ALLEGATIONS

22. In September of 2016, an Amazon storefront, operated by www.amazon.com seller "dtnetworks" was advertising and selling what it claimed to be Cisco-branded software licenses, including a listing for "Cisco OnDemand Port Activation License." Cisco's software, however, is licensed by Cisco to a specific end user, where that license is not generally transferable and cannot be resold. Cisco's current End User License Agreement is attached hereto as Exhibit A. As such, any such software license distribution by this reseller was, and is, infringing.

23. Accordingly, on September 8, 2016, Cisco sent DT Networks a cease and desist letter. On October 18, 2016, DT Networks responded stating in essence that DT Networks was being permanently shut down. The official records from the state of Washington supported the claim that Daldan Technologies, LLC, doing business as DT Networks went inactive on October 26, 2016, about a week after DT Networks' response. This public record also shows the principals of DT Networks included Defendant Ronald Reed:



24. Given the above and their representations to Cisco, Cisco at that time reasonably believed that DT Networks, including its principal Mr. Reed, had agreed to shut down and to stop infringing Cisco's IP rights. As such, Cisco reasonably forbore from filing any legal action

1  against DT Networks and Mr. Reed in reliance on the representations their counsel made at the
2  time.  Unfortunately, Mr. Reed appears not to have taken very long to get back to distributing
3  infringing and/or stolen Cisco software licenses.

4        25.      In 2018, Cisco discovered that another company operating out of Washington –
5  Shoc Networks – had begun unlawfully distributing Cisco software.  Namely, Cisco learned that
6  Shoc Networks had purported to distribute numerous "Cisco" software licenses to a large
7  California-based IT and networking products and services reseller and to a Canadian-based
8  communications product reseller with offices around the U.S.

9        26.      Although Cisco was unaware of this at the time, apparently just before shutting
10 down DT Networks, Mr. Reed decided to transfer his unlawful and infringing Cisco software sales
11 to a new company, called Shoc Networks.  As the public record from Washington State sets forth,
12 Mr. Reed is the only principal of Shoc Networks and started the company the week before DT
13 Networks informed Cisco that DT Networks was ceasing to do business:



26       27.      Mr. Reed's Linkedin profile also confirms that he is the President of Shoc
27 Networks, and further states that he has been in that position from April 2011 to the present,
28 further confirming that Shoc Networks was just a continuation of the DT Networks business:



28. Cisco does not authorize third parties, like Defendants, to distribute its software online. Instead, Cisco only offers its software to be licensed through authorized channels. As such, it appeared that both DT Networks and Shoc Networks, acting through Mr. Reed, were distributing "Cisco" branded software in competition with genuine and licensed Cisco software and trading off of Cisco's trademarks to do so, by misrepresenting the source of the software as being "new" software from Cisco.

29. In addition, Cisco has further analyzed the infringing software licenses being distributed by Shoc Networks, including the "Cisco" branded software licenses distributed by Shoc Networks to the identified California-based reseller. Cisco has determined that all of those "Cisco" branded software licenses distributed by Shoc Networks were pirated and/or stolen. Further, Cisco was able to determine that the software license claim certificates that accompanied these "Cisco" branded software licenses were counterfeit copies. These "Cisco" branded counterfeit license claim certificates were mocked up to look very similar to genuine Cisco

1  software license claim certificates.  But there were a number of small differences between the

2  counterfeit version distributed by Shoc Networks and the software license claim certificate

3  originally issued by Cisco.  For example, here is a copy of one of the counterfeit certificates that

4  accompanied one of the software sales by Defendants, cropped so as not to further reveal the illicit

5  license key information:

**CISCO**

**Software License Claim Certificate**

**Dear Customer,**

By accessing or using the Cisco products identified below, you agree that your use of such products is governed by the terms and conditions of the Cisco Software License and any applicable supplemental license agreement. To review the terms of the Software License before accessing or using the products, you can find a copy of the Cisco Software License in the Cisco Information Packet that accompanies the products below or online at:

http://www.cisco.com/en/US/docs/general/warranty/English/EU1KEN_.html

To obtain the license authorization key/file, log on to one of the websites listed below, and follow the registration instructions. The Product Authorization Key (PAK) number found below is required for the registration process. After registering, retain this document for future reference.

**Registration Information**
Use this website if you are registered user of Cisco.com:
http://www.cisco.com/go/license

You should receive the license authorization key/file and installation instructions through e-mail within one hour of registration. If you experience problems with the registration websites or if you have additional questions, for a prompt response, please open a Service Request using the TAC Service Request Tool at http://tools.cisco.com/ServiceRequestTool/create/DefineProblem.do. Please have your valid Cisco user ID and password available. As an alternative you may also call one of the following numbers:
Asia-Pacific: +61 2 8446 7411 (Australia: 1 800 805 227)
EMEA: +32 2 704 55 55
USA: 1 800 553-2447

You can find a complete list of Cisco TAC contacts at this URL:
http://www.cisco.com/techsupport/contacts

19       30.     As shown above, the counterfeit license claim certificates distributed by

20  Defendants, like the one above, bore spurious versions of the Cisco Marks, and also had a number

21  of small but key errors and other differences to otherwise distinguish them from a genuine Cisco

22  license claim certificate.  It also references the Cisco End User License Agreement, sets forth

23  Cisco's location in San Jose, California, as well as instructions to the "Customer" to purportedly

24  obtain the license authorization from Cisco by registering the stolen and/or pirated software

25  license with Cisco.  Of course, Defendants' customers did not receive any valid license rights

26  through their purchases of pirated and/or stolen software licenses from Defendants.

27       31.     On August 7, 2018, Cisco sent Shoc Networks a cease and desist letter referencing

28  Shoc Networks' fulfilled orders of infringing Cisco software licenses to the California-based

reseller and the other resellers. The letter also incorporated a demand to preserve all evidence related to the purchase and/or sale of the referenced licenses. Shoc Networks responded but would not agree to cease and desist from further sales of infringing "Cisco" branded software licenses.

32. Defendants' unlawful and infringing conduct is even more appalling given the prior misleading representations about DT Networks closing down, while it simply rebranded and continued infringing Cisco's IP. The prior cease and desist efforts with DT Networks therefore further confirm that Defendants' conduct alleged herein was willful, intentional, and committed with malice and bad faith.

## CISCO'S CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Federal Trademark Infringement and Counterfeiting**
*15 U.S.C. § 1114*
**(Against All Defendants)**

33. Cisco incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

34. The Cisco Marks are valid, protectable trademarks that have been registered as marks on the principal register in the United States Patent and Trademark Office.

35. Cisco is the owner and registrant of the Cisco Marks.

36. As described in more detail above, each Defendant has used the Cisco Marks in connection with the marketing, promotion, and sale of goods without Cisco's consent, in a manner that is likely to cause, and has actually caused, confusion and/or mistake, or that has deceived members of the consuming public and/or the trade. Further, each Defendant has, at a minimum, created or distributed stolen/pirated "Cisco" branded software licenses (which are "Cisco" products) without Cisco's authorization, and such goods are not considered "genuine" within the definition of the Lanham Act. Defendants' further counterfeited Cisco's marks in the materials accompanying the sale of these software licenses.

37. Defendants counterfeiting and infringing activities are likely to cause and are actually causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin, sponsorship, and quality of Defendants' infringing and

counterfeit products.  As of the filing of this Complaint, Cisco is informed and believes, and thereon alleges, that Defendants are continuing to infringe the Cisco Marks unabated as alleged further above.  As such, each Defendant has engaged in both trademark infringement and counterfeiting under 15 U.S.C. § 1114.

38. Defendants' infringement of the Cisco Marks is willful and their conduct, as alleged herein, constitutes an exceptional case under 15 U.S.C. § 1117.

39. Cisco has been, and continues to be, damaged by Defendants' infringement, including by suffering irreparable harm through the diminution of trust and goodwill among Cisco consumers and members of the general consuming public and the trade.  Cisco has no adequate remedy at law.  As a result of Defendants' infringement of the Cisco Marks, Cisco is entitled to an injunction, and an order of destruction of all of Defendants' infringing materials.

40. As a direct and proximate result of their infringements, Defendants have realized unjust profits, gains, and advantages at the expense of Cisco, including as set forth above.  In addition, Cisco has suffered substantial loss and damages to its property and business, including significant monetary damages as a direct and proximate result of Defendants' infringements, including as set forth above.  The harm caused by Defendants' unlawful conduct entitles Cisco to recovery of all available remedies under the law, including but not limited to actual damages, infringers' profits, treble damages, statutory damages (if elected), reasonable attorney fees, costs, and prejudgment interest.

**SECOND CLAIM FOR RELIEF**
**Federal Unfair Competition**
*15 U.S.C. § 1125(a)*
**(Against All Defendants)**

41. Cisco incorporates each of the foregoing paragraphs of this Complaint as if fully set forth herein.

42. Each Defendant did, without authorization, use in commerce the Cisco Marks, and also make false designations of origin, false or misleading descriptions of fact, and/or false or misleading representations of fact, which were and are likely to cause confusion, or to cause mistake, or to deceive customers as to the affiliation, connection, or association of Defendants

1 with Cisco, and/or as to the origin, sponsorship, or approval of the Defendants' goods, services, or
2 commercial activities.

3     43. Defendants' acts have been committed with knowledge of Cisco's exclusive rights
4 and goodwill in Cisco Marks, as well as with willfulness, bad faith, and the intent to cause
5 confusion, mistake and/or to deceive. Defendants' conduct, as alleged herein, constitutes an
6 exceptional case under 15 U.S.C. § 1117.

7     44. Defendants' unauthorized use of counterfeit copies of Cisco's Marks falsely
8 represents Defendants' counterfeit "Cisco" products as emanating from, or being authorized by,
9 Cisco and places beyond Cisco's control the quality of products bearing Cisco Marks.

10     45. Cisco has been, and continues to be, damaged by Defendants' infringement,
11 including by suffering irreparable harm through the diminution of trust and goodwill among Cisco
12 consumers and members of the general consuming public and the trade. Cisco has no adequate
13 remedy at law. As a result of Defendants' infringement of the Cisco Marks, Cisco is entitled to an
14 injunction, and an order of destruction of all of Defendants' infringing materials.

15     46. As a direct and proximate result of their infringements, Defendants have realized
16 unjust profits, gains and advantages at the expense of Cisco, including as set forth above. In
17 addition, Cisco has suffered substantial loss and damages to its property and business, including
18 significant monetary damages as a direct and proximate result of Defendants' infringements,
19 including as set forth above. The harm caused by Defendants' unlawful conduct entitles Cisco to
20 recovery of all available remedies under the law, including but not limited to actual damages,
21 infringers' profits, treble damages, statutory damages (if elected), reasonable attorney fees, costs,
22 and prejudgment interest.

**THIRD CLAIM FOR RELIEF**
**Federal Direct and Indirect Copyright Infringement**
*17 U.S.C. §§ 501, et seq.*
**(Against All Defendants)**

26     47. Cisco incorporates each of the foregoing paragraphs of this Complaint as if fully set
27 forth herein.

28     48. Cisco's copyrighted software contains a substantial amount of original material

(including without limitation code, specifications, documentation and other materials) that is copyrightable subject matter under the Copyright Act, 17 U.S.C. §§ 101, *et seq.* Cisco owns valid copyrights in its software, including but not limited to the registered software copyrights, set forth in paragraph 20 above.

49. Without consent, authorization, approval, or license, each Defendant knowingly, willingly, and unlawfully copied, prepared, published, and/or distributed Cisco's copyrighted works, portions thereof, and/or derivative works of the same, constituting direct copyright infringement.

50. As alleged above, each Defendant distributed numerous copies of Cisco's copyright-registered software without authorization and in violation of Cisco's copyrights. Such distribution and use was not licensed. In addition, each Defendant has thereby induced, caused, and materially contributed to the infringing acts of their customers by encouraging, inducing, allowing and assisting them to use, copy, and/or further distribute Cisco's copyrighted works, and works derived therefrom. As such, Defendants have engaged in both direct and indirect copyright infringement in violation of Section 501 of the Copyright Act.

51. Defendants' direct and indirect infringements are, and have been, knowing and willful. By this unlawful copying, use, and/or distribution, Defendants have violated Cisco's exclusive rights under 17 U.S.C. § 106 of the Copyright Act.

52. Cisco is entitled to an injunction restraining Defendants from engaging in any further such acts in violation of the United States copyright laws. Unless Defendants are enjoined and prohibited from infringing Cisco's copyrights, or inducing others to infringe Cisco's copyrights, and unless all infringing software, including but not limited to all pirated/stolen software licenses, is seized and impounded pursuant to Section 503 of the Copyright Act, Defendants will continue to intentionally infringe and induce infringement of Cisco's registered copyrights.

53. Defendants' aforesaid conduct is causing immediate and irreparable injury to Cisco and to Cisco's goodwill, and will continue to damage Cisco unless enjoined by this Court. Cisco has no adequate remedy at law. As a direct and proximate result of their infringements,

Defendants have realized unjust profits, gains and advantages at the expense of Cisco, including as set forth above. In addition, Cisco has suffered substantial loss and damages to its property and business, including significant monetary damages as a direct and proximate result of Defendants' infringements, including as set forth above. The harm caused by Defendants' unlawful conduct entitles Cisco to recovery of all available remedies under the law, including but not limited to actual damages, infringers' profits, statutory damages (if elected), reasonable attorney fees, costs, and prejudgment interest.

### FOURTH CLAIM FOR RELIEF
**Trafficking In Counterfeit and/or Illicit Labels and Documentation**
*18 U.S.C. § 2318*
**(Against All Defendants)**

54. Cisco incorporates each of the foregoing paragraphs of this Complaint as if fully set forth herein.

55. 18 U.S.C. § 2318 provides in pertinent part that it is a federal crime for persons to knowingly traffic in counterfeit or illicit labels, documentation, or packaging accompanying a copy of a computer program. Any copyright owner who is injured, or is threatened with injury, by a violation of 18 U.S.C. § 2318(a) may bring a civil action.

56. Cisco's software license claim certificates are designed to accompany genuine copies of Cisco software, identifying that the end user has a valid software license authorized by Cisco. As such, Cisco's software license claim certificates constitute labels and/or documentation within the meaning of 18 U.S.C. § 2318. As alleged in more detail above, Defendants have trafficked in counterfeit and/or illicit "Cisco" branded software license claim certificates.

57. Further, the software license keys that accompany genuine Cisco software licenses constitute labels within the meaning of 18 U.S.C. § 2318. In order to access and run Cisco's copyright protected software, licensees must validate their copies of Cisco's software with license keys that are generated through Cisco's computer systems. The license keys are encrypted alphanumeric codes that are encoded with the authorized software features that have been licensed. In this way, the Cisco software license keys are designed to distribute Cisco software to licensed end users and to prevent distribution, copying, and infringement by unlicensed users or in

excess of a user's license.  Further, because these Cisco software license keys control the access to Cisco's software and because these license entitlements are tracked internally by Cisco, these Cisco software license keys also enable Cisco to verify whether a particular copy of its software installed on a user's system is counterfeit or infringing, or being used without Cisco's permission.

58. Cisco's software license keys are therefore also identifying labels accompanying and designed to accompany copies of Cisco's computer programs.  The pirated/stolen software license keys that Defendants trafficked in therefore constitute illicit labels within the meaning of 18 U.S.C. § 2318, as they are actual license keys that are used by Cisco to verify whether a copy of a computer program is not infringing of any Cisco copyright.  Further, Cisco did not authorize the further distribution of these license keys, which were stolen/pirated.

59. As further alleged above, Defendants were willfully and knowingly trafficking in counterfeit and/or illicit labels, documentation, or packaging accompanying a copy of a computer program, including but not limited to because Cisco had previously informed Defendants of the infringing nature of these "Cisco" branded license sales through its cease and desist letters to DT Networks and Shoc Networks.

60. Defendants' acts in the commission of the above unlawful conduct used or intended to use interstate and/or foreign commerce.  Further, the Cisco software license keys must accompany the delivery of Cisco software, as without the license key the Cisco software will not operate.

61. Defendants' aforesaid conduct is causing immediate and irreparable injury to Cisco and to Cisco's goodwill, and will continue to damage Cisco unless enjoined by this Court.  Cisco has no adequate remedy at law.  Cisco is entitled to an injunction restraining Defendants from engaging in any further such acts in violation of 18 U.S.C. § 2318.  Unless Defendants are enjoined and prohibited from such conduct, and unless all illicit and/or counterfeit labels and documentation, including but not limited to all counterfeit software license claim certificates and all pirated/stolen software license keys, are seized and impounded pursuant to 18 U.S.C. § 2318, Defendants will continue to traffic in such illicit and/or counterfeit labels.

62. As a direct and proximate result of their unlawful conduct in violation of 18 U.S.C.

1  § 2318, Defendants have realized unjust profits, gains and advantages at the expense of Cisco, including as set forth above.  In addition, Cisco has suffered substantial loss and damages to its property and business, including significant monetary damages as a direct and proximate result of Defendants' infringements, including as set forth above.  The harm caused by Defendants' unlawful conduct entitles Cisco to recovery of all available remedies under the law, including but not limited to actual damages, infringers' profits, statutory damages (if elected), reasonable attorney fees, costs, and prejudgment interest.

## PRAYER FOR RELIEF

WHEREFORE Cisco respectfully prays that the Court enter judgment and order as follows:

A.  Entry of judgment holding Defendants liable for infringement of the copyrights and trademarks at issue in this litigation, as well as for the other statutory and legal violations alleged herein;

B.  An order permanently enjoining Defendants, their directors, officers, agents, servants, employees, attorneys, and affiliated companies, their assigns and successors in interest, and those persons in active concert or participation with them, from continued acts of infringement of the trademarks and copyrights at issue in this litigation, further acts of unfair competition, as well as from further acts of trafficking in counterfeit or illicit labels/documentation;

C.  An order that all infringing Cisco software and/or Cisco software license copies in Defendants' possession, custody, or control in violation of rights under the Copyright Act, 17 U.S.C. Section 101, *et seq.*, and all means by which such copies may be reproduced, be seized, impounded, and transferred to Cisco or to the Court, pursuant to Section 503 of the Copyright Act;

D.  An order that any counterfeit or illicit labels related to Cisco products in any way that are in Defendants' possession, custody, or control, be seized, impounded, and transferred to Cisco or to the Court, pursuant to 18 U.S.C. Sections 2318 & 2323;

E.  An order awarding Cisco its actual damages according to proof resulting from Defendants' unlawful conduct, as alleged above, as well as Defendants' profits to the fullest extent available under the law;

F.  An order that Plaintiffs be awarded statutory damages to the fullest extent available under the law to the extent that Cisco elects statutory damages for one or more of its claims;

G.  An order that Plaintiffs be awarded prejudgment interest;

H.  An order that Plaintiffs be awarded reasonable attorneys' fees and costs to the fullest extent available under the law;

I.  An order that Plaintiffs be awarded trebled, enhanced, and exemplary damages to the fullest extent available under the law;

J.  An order that Plaintiffs be awarded full restitution, including restoration of all property unlawfully taken from Cisco, as well as any ill-gotten gains from the resale of Cisco's property to the fullest extent available under the law;

K.  An order that Plaintiffs be awarded temporary, preliminary and permanent injunctive relief, specific performance, and other provisional remedies, as appropriate; and,

L.  An order that Plaintiffs be granted such other and further relief as the Court deems just and proper.

DATED: November 14, 2019                SIDEMAN & BANCROFT LLP

By:   */s/ Zachary J. Alinder*
Zachary J. Alinder
*Attorneys for Plaintiffs*
CISCO SYSTEMS, INC.
and CISCO TECHNOLOGY, INC.

**JURY DEMAND**

Pursuant to Civ. L.R. 3-6 and Fed. R. Civ. Proc. 38, Plaintiffs CISCO SYSTEMS, INC. and CISCO TECHNOLOGY, INC. hereby demand a trial by a jury on all issues herein so triable.

DATED: November 14, 2019     SIDEMAN & BANCROFT LLP

By: ____*/s/ Zachary J. Alinder*____
Zachary J. Alinder
*Attorneys for Plaintiffs*
CISCO SYSTEMS, INC.
and CISCO TECHNOLOGY, INC.